Filed 2/27/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| CENTRAL COAST FOREST ASSOCIATION et al., | ) ) ) | |
| Plaintiffs and Respondents, | ) ) | S208181 |
| v. | ) ) | Ct.App. 3 C060569 |
| FISH AND GAME COMMISSION, | ) ) | Sacramento County |
| Defendant and Appellant. | ) ) | Super. Ct. No. 07CS00851 |
| _____ | ) | |

The California Endangered Species Act (CESA or the Act) (Fish & G. Code, § 2050 et seq.)[1] directs the Fish and Game Commission (Commission) to "establish a list of endangered species" (§ 2070), which "means a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant which is in serious danger of becoming extinct throughout all, or a significant portion, of its range due to one or more causes, including loss of habitat, change in habitat, overexploitation, predation, competition, or disease" (§ 2062). In 1995, the Commission added to the list coho salmon (coho) in streams south of San Francisco. In 2004, it joined this coho population with coho from San Francisco north to Punta Gorda, and since then has included "Coho salmon . . . south of

---

[1] All further unlabeled statutory references are to the Fish and Game Code.

Punta Gorda (Humboldt County)" in its list of endangered species. (Cal. Code Regs., tit. 14, § 670.5, subd. (a)(2)(N).)[2]

In this proceeding, plaintiffs and respondents Central Coast Forest Association (Central Coast) and Big Creek Lumber Company (Big Creek) (collectively "plaintiffs") filed a petition asking the Commission to "redefine the southern boundary of [its coho listing] to exclude coastal streams south of San Francisco, effectively delisting coho salmon south of San Francisco from the register of endangered . . . species." They asserted that, because these fish were "artificially introduced" into the area and have since been "hatchery maintained," they are not "native" within the meaning of CESA and "do not qualify for listing." The Court of Appeal did not reach the merits of plaintiffs' argument, holding that the petition failed for a procedural reason: it attacked the Commission's final listing decisions in 1995 and 2004 as having no basis, and "a petition to delist a species may not be employed to challenge a final determination of the Commission."

Consistent with the Commission's concession that the Court of Appeal erred, we reverse. We remand the matter to the Court of Appeal for consideration of the petition's merits, rather than address them here in the first instance.

FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

CESA implements "the policy of the state to conserve, protect, restore, and enhance any endangered species or any threatened species and its habitat." (§ 2052.) These species, the Act declares, "are of ecological, educational, historical, recreational, esthetic, economic, and scientific value to the people of

---

[2] All further unlabeled references to administrative regulations are to title 14 of the California Code of Regulations (Regulations).

2

this state, and the conservation, protection, and enhancement of these species and their habitat is of statewide concern." (§ 2051.)

Under CESA, "a native species or subspecies" qualifies as "endangered" if it "is in serious danger of becoming extinct throughout all, or a significant portion, of its range due to one or more causes, including loss of habitat, change in habitat, overexploitation, predation, competition, or disease." (§ 2062.) A "native species or subspecies" qualifies as "threatened" if it is "not presently threatened with extinction," but "is likely to become an endangered species in the foreseeable future in the absence of . . . special protection and management efforts." (§ 2067.) It is the Commission's duty to "establish a list of endangered species and a list of threatened species," and to "add or remove species from either list if it finds, upon the receipt of sufficient scientific information . . . that the action is warranted." (§ 2070.) The Commission's list of endangered and threatened species appears in section 670.5 of title 14 of the California Code of Regulations.

Any "interested person may petition the [C]omission to add a species to, or to remove a species from" these lists. (§ 2071.) A multi-step process exists for processing these petitions. First, the Department of Fish and Game (Department), upon a referral from the Commission (§ 2073), "evaluate[s] the petition on its face and in relation to other relevant information the [D]epartment possesses or receives," and prepares a "written evaluation report" that includes a recommendation as to whether the Commission should "reject[]" the petition or "accept[] and consider[]" it, depending on whether "there is sufficient information to indicate that the petitioned action *may be* warranted." (§ 2073.5, subd. (a). italics added.) During this evaluation, any "person may submit information to the [D]epartment relating to the petitioned species." (§ 2073.4, subd. (a).) Second, the Commission, after "consider[ing] the petition, the [D]epartment's written report, [and] written comments received," determines whether the petition "provides sufficient information to indicate that the petitioned action *may be* warranted." (§ 2074.2, subd. (e)(1) & (2), italics added.) Upon finding that the

3

petition does not provide such information, the Commission rejects it. (§ 2074.2, subd. (e)(1).) Upon finding that the petition does provide such information, the Commission "accept[s]" it "for consideration." (§ 2074.2, subd. (e)(2).) Third, as to an accepted petition, the Department then conducts a more comprehensive "review of the status of the [petitioned] species" and produces a written report, "based upon the best scientific information available to the [D]epartment, which indicates whether the petitioned action *is* warranted." (§ 2074.6.) Finally, after receiving the Department's report, the Commission determines whether the petitioned action "is warranted" or "is not warranted." (§ 2075.5, subd. (e).)

In December 1993, the Commission received a petition "to list the coho salmon populations south of San Francisco Bay . . . as a threatened species" under CESA. In June 1995, the Commission found that the information in the petition "warrant[ed] listing that species as endangered" instead of only threatened. It subsequently amended Regulations section 670.5 to declare "Coho salmon . . . south of San Francisco Bay" to be an endangered species. (Regs., § 670.5 former subd. (a)(2)(N); Register 95, No. 48 (Dec. 1, 1995).)

In July 2000, the Commission received a petition to list coho salmon "North of San Francisco Bay" as an endangered species. In August 2002, the Commission divided this population into two geographical groups, finding that coho "north of Punta Gorda" were a "threatened" species and that coho "north of, and including San Francisco Bay to Punta Gorda" were an "endangered" species. As authorized by section 2114, the Commission postponed amendment of its regulations to reflect these findings pending the Department's preparation of a "recovery strategy." (Former § 2114, as amended by Stats. 2013, ch. 387, § 12.)

Plaintiffs then attacked the listing of coho south of San Francisco on two fronts. Beginning in December 2003, Big Creek, in connection with the recovery strategy the Department was developing, submitted several memoranda to the Commission arguing that coho south of San Francisco "do not meet the criteria to be protected as endangered" because they "are exotic to," and "cannot survive in,"

4

that area and "will eventually succumb to natural stochastic events without hatchery support." Separately, on June 17, 2004, plaintiffs jointly filed the petition at issue in this case, which asked the Commission "to redefine the southern boundary of the Central California Coho Salmon [listing] so as to exclude (delist) coho salmon in all streams south of San Francisco." Plaintiffs' various submissions cross-referenced these separate attacks. The petition here at issue noted that "[s]ome of the information" it contained "ha[d] previously been conveyed to [the] [C]ommission" in a December 2003 communication addressing the Department's "Recovery Strategy." By separate letter submitted in connection with the recovery strategy, Big Creek highlighted its filing of the petition in this case and stated that the petition was based on "previously unconsidered scientific and historical evidence show[ing] that the legal standard for listing" coho south of San Francisco as an endangered species "ha[d] not been met."

In August 2004, the Commission voted to amend Regulations section 670.5 to reflect its 2002 decision to add coho north of San Francisco to the lists of endangered and threatened species. In the amended regulation it later published, it combined previously listed coho south of San Francisco with newly listed coho north to Punta Gorda, collectively designating "Coho salmon . . . south of Punta Gorda (Humboldt County)" as an endangered species. (Regs., § 670.5, subd. (a)(2)(N)). It separately listed "Coho salmon . . . from Punta Gorda (Humboldt County), California to the northern border of California" as a threatened species. (Regs., § 670.5, subd. (b)(2)(E)).

About six months later, in February 2005, the Commission, following the Department's report and recommendation, voted to reject plaintiffs' petition in this case. The next month, it issued a written finding that "the petition did not provide sufficient information to indicate that the petitioned action may be warranted."

In June 2005, an action was filed in superior court challenging the Commission's 2002 listing decisions and its 2004 amendment of Regulations section 670.5. (*California Forestry Assn. v. California Fish & Game Commission*

5

(2007) 156 Cal.App.4th 1535 (*California Forestry*).) The superior court rejected that challenge in August 2006, and the Third District Court of Appeal affirmed the superior court's decision in November 2007. (*Id.* at p. 1544.)

Plaintiffs did not participate in the *California Forestry* action. Instead, in late 2005, they filed a separate judicial proceeding challenging the Commission's rejection of their petition. In late 2006, the superior court, concluding that the record and findings were insufficient to support the Commission's decision, granted relief and ordered the Commission to reconsider the petition. The Commission did so in March 2007, again voting to reject the petition. The Commission later issued a formal finding "that the petition did not provide sufficient information to indicate that the petitioned action may be warranted." The Commission found that plaintiffs had provided "little credible evidence . . . regarding the continuing status of coho salmon south of San Francisco" and "no credible evidence" that those fish were " 'no longer threatened.' "

Regarding the focus of plaintiffs' petition — that coho south of San Francisco should be excluded because they "are not native to streams" in that area — the Commission first responded that plaintiffs' argument "misunderstands CESA and its applications to all populations of native species within California." According to the Commission, the term "native species" in CESA's definition of "endangered species" (§ 2062) does not, as plaintiffs assert, mean "only those species (1) with an uninterrupted presence throughout all of their California range, and (2) never the subject of artificial propagation or restoration efforts." Instead, "[b]oth a plain language reading of the Act and an examination of species already protected under the Act reveals that the 'native species' governed by the Act are all species indigenous to California. CESA's protection extend[s] to indigenous species wherever they occur in California — throughout all or a significant portion of their range. Nor does CESA discriminate between hatchery and naturally spawning populations." Thus, "[e]ven if" plaintiffs "are correct" in asserting that coho south of San Francisco "are derived from hatchery planting" and " 'stray

6

spawnings' of fish from north of San Francisco populations," those fish "would represent a range expansion of the species in California and would be subject to the provisions of CESA, regardless of how they got there. Genetic analysis indicates that coho . . . south of San Francisco are clearly part of the large salmonid resources of the State of California. As such, they continue to warrant listing under CESA."

The Commission additionally found that, in any event, "each of" plaintiffs' arguments on this issue was "unsupported by evidence in the record and, in fact, . . . reflect[ed] numerous mischaracterizations of evidence, numerous misstatements of facts, and a strong reliance on speculation and innuendo rather than rational scientific analysis." The Commission then offered a detailed response to plaintiffs' arguments.

Finally, the Commission relied on the rejection of a similar petition that Big Creek had filed to eliminate protection of essentially the same fish population under the federal Endangered Species Act of 1973 (16 U.S.C. § 1531 et seq.) (FESA). In 1996, the National Marine Fisheries Service (NMFS) listed "Central California coast coho salmon" — "consist[ing] of all coho salmon naturally reproduced in streams between Punta Gorda, Humboldt County, CA and the San Lorenzo River, Santa Cruz County, CA" — as a "threatened species" under FESA. (61 Fed.Reg. 56146, 56149 (Oct. 31, 1996).) In 2005, the NMFS changed that listing to "endangered." (70 Fed.Reg. 37192-37193 (June 28, 2005).) In 2003, before the making of that change, Homer McCrary, who signed the petition at issue here as vice president of Big Creek, filed a petition "to redefine the southern boundary of the [federal] Central California Coast" coho listing "to exclude coho salmon populations in the counties (Santa Cruz County and coastal San Mateo County) south of San Francisco Bay." (71 Fed.Reg. 14683-14684 (Mar. 23, 2006).) "This [federal] petition," the Commission observed in its findings, "was in all relevant aspects identical to the petition before the Commission." In 2006, the NMFS rejected the federal petition, finding (1) it "fail[ed] to present

7

substantial scientific or commercial information indicating that the petitioned action may be warranted," and (2) based on a review of "the best available scientific and other information, . . . the petitioned action is not warranted." (71 Fed.Reg. 14683 (Mar. 23, 2006).) The Commission, in its findings here, stated: "[T]he thorough assessment of the record performed by NMFS and its subsequent conclusion are significant additional evidence in support of the Commission's rejection of the petition. Furthermore, the NMFS evidentiary assessment provides further support for the Commission's assessment and conclusions regarding the credibility of the petitioners and [their] evidentiary statements."

Plaintiffs again sought writ relief in the superior court. The court granted relief, again finding that the record did not contain substantial evidence to support the Commission's decision. Among other things, the court rejected the Commission's view that it lacks authority "to protect less than the entire taxonomic species" and therefore must "protect the coho wherever it is found." Instead, the court ruled, the Commission "has authority and discretion to decline to provide CESA protection to coho populations south of San Francisco if they did not have a historical presence there and if their current presence is not the result of natural expansion of their range." Consistent with this ruling, the court later issued a writ of mandate ordering the Commission to set aside its decision, to accept plaintiffs' delisting petition, and "to proceed to further review as provided in sections 2074.4 *et seq.*"

On appeal, a divided court reversed the trial court's decision, the majority concluding that the petition was procedurally improper. It reasoned as follows: (1) through their petition, plaintiffs seek to attack the Commission's 1995 and 2004 listing decisions, "challenging" their "underlying" facts and "seeking to show that there was no basis for" either; (2) under section 2076, "administrative mandamus" is the "exclusive means" for obtaining judicial review of those *final* listing decisions"; (3) a delisting petition, by contrast, "is directed to events that occur *after* the listing of the species" (italics added), and therefore "is not a

8

means" for submitting new information "to challenge . . . the merits of a final determination"; and (4) because "a delisting petition may not be employed at all to challenge a final decision," plaintiffs' petition, which challenges the earlier decisions, "need not be reviewed at the preliminary stage."[3]

Unlike the majority, the dissent found "[n]othing in CESA" indicating that "the Commission cannot reconsider its own legislative decision because the decision is final for purposes of judicial attack." "In fact," the dissent asserted, "CESA says the opposite. It expressly authorizes the Commission to reconsider its prior listing decisions even though they may be final for purposes of judicial review. Specifically, the statute vests the Commission with authority to delist a species when it finds upon the receipt of sufficient scientific information that the 'action is warranted.' (§ 2070.)"

We granted plaintiffs' petition for review.

### DISCUSSION

In concluding that a delisting petition is an improper vehicle for challenging an "original listing" decision of the Commission, the Court of Appeal did not point to any provision of the Act that directly establishes this proposition. Indeed, there appears to be none. Section 2070 directs the Commission to "remove" species from the endangered species list upon finding "that the action is warranted," but does not prescribe any criteria for determining whether removal is warranted. Other CESA sections contain similar wording. (§§ 2072.3 [petition must "include sufficient scientific information that a petitioned action may be warranted"], 2073.5, subd. (a) [department must recommend whether there is "sufficient information to indicate that the petitioned action may be warranted"], 2074.2, subd. (e) [in deciding whether to accept petition for detailed review,

---

[3]      The Court of Appeal first injected this procedural issue into the case in a request for supplemental briefs.

9

Commission must determine whether there is "sufficient information to indicate that the petitioned action may be warranted"], 2075.5, subd. (e) [after detailed review of accepted petition, Commission must determine whether the action "is" or "is not warranted"].)

Instead, the Court of Appeal relied primarily on the Commission's delisting regulation, Regulations section 670.1, subdivision (i)(1)(B). That regulation, the court emphasized, focuses on whether a species's "continued existence is *no longer* threatened by" any of the factors specified elsewhere for determining whether a species is endangered. (*Ibid.*, italics added.) Moreover, the court reasoned, "all of" the specified factors — "[p]resent or threatened modification or destruction of its habitat," "[o]verexploitation," "[p]redation," "[c]ompetition," "[d]isease," "[o]ther natural occurrences or human-related activities" (Regs. § 670.1, subd. (i)(1)(A)) — "relate to the present condition of the species." Therefore, the court concluded, the regulation "embodie[s]" the "requirement" that a delisting petition be "directed to events that occur after the listing of the species." Secondarily, the court emphasized that the periodic, five-year species review CESA requires the Department to conduct "is limited to the 'present' condition of the species, whether '*the conditions that led to the original listing are still present,*' " and must "include a review of the identification of the habitat that may be essential to the *continued existence* of the species." (§ 2077, subd. (a), italics added.)

Plaintiffs argue the Court of Appeal incorrectly limited the scope of a delisting petition. In their view, although a petition may not "assert[] merely that an initial listing decision was wrong *based on the record before the Commission*," it may, "consistent with the statutory design," "alleg[e], in substance, that the Commission's prior findings need to be reconsidered in light of new evidence." CESA, plaintiffs assert, "does not purport to limit the application of advances in scientific understanding in any way," but "contemplates" that the Commission's decisions are "always subject to revision in light of increasing scientific

10

understanding. For example, the [D]epartment . . . may recommend to the Commission that it delist a species at any time. (§ 2072.7.) In general, the Commission's decisionmaking is to be based on 'the best scientific information available' (§§ 2074.6 & 2077), language that reflects legislative recognition that information and scientific understanding [are] subject to change, and the Commission's decisions ought to evolve along with scientific understanding." Notably, the Commission agrees with plaintiffs that the Court of Appeal erred, and that a delisting petition may, based on new evidence, challenge an earlier listing decision.[4]

We agree with the parties that the Court of Appeal erred. As noted above, no provision of CESA directly establishes that the Commission may not base a decision to delist on new evidence showing that the listed species does not qualify for listing. As plaintiffs emphasize, CESA contains three different mechanisms for revisiting listing decisions: (1) "an interested person may petition the [C]omission to . . . remove a species from" the list of endangered species (§ 2071); (2) "[t]he [D]epartment may, in the absence of a petition from an interested party, recommend to the [C]ommission that it . . . remove a species from" the list (§ 2072.7); and (3) "[t]he [D]epartment shall review species listed as an endangered species . . . every five years to determine if the conditions that led to the original listing are still present" (§ 2077, subd. (a)). Notably, the provision requiring review every five years states: "Notwithstanding any other provision of this section, the [C]ommission or the [D]epartment may review a species *at any time based upon a petition or upon other data available to the* [D]*epartment and the* [C]*ommission*." (§ 2077, subd. (d), italics added.) It also requires the Department to base the periodic review on "the best scientific information

---

**4** The Commission argued below that plaintiffs' petition did not offer new evidence. In this court, the Commission "assumes *arguendo* that the petition did contain . . . new information." We therefore do not address that question.

11

available to the [D]epartment." (§ 2077, subd. (a).) A similar requirement appears in section 2074.6, subdivision (a), which states that the Department, in evaluating an accepted delisting petition and recommending whether the petitioned action is warranted, shall base its recommendation on "the best scientific information available." Plaintiffs persuasively argue that this language appears to "reflect[] legislative recognition that information and scientific understanding [are] subject to change," and legislative intent that "the Commission's decisions ought to evolve along with scientific understanding."

Also significant is section 2072.3, which sets forth the requirements a petition must satisfy for acceptance. "[A]t a minimum," the section begins, the petition "shall . . . include sufficient scientific information that a petitioned action may be warranted." (*Ibid.*) The section then lists specific information the petition "shall include": population trend, range, distribution, abundance, life history, factors affecting the population's ability to survive and reproduce, degree and immediacy of the threat, impact of existing management efforts, suggestions for future management, availability and sources of information, kind of habitat necessary for species survival, and a detailed distribution map. The section then ends by making this list *nonexhaustive*, stating broadly that "[t]he petition shall also include . . . any other factors that the petitioner deems relevant." (*Ibid.*) Collectively, these provisions support plaintiffs' assertion that using a delisting petition to challenge a listing decision based on new evidence would be "consistent with" CESA's "design."

The state regulation on which the Court of Appeal relied — Regulations section 670.1 — offers scant support for a contrary conclusion. In relevant part, it first provides that "[a] species shall be listed as endangered or threatened . . . if the Commission determines that its continued existence is in serious danger or is threatened by any one or any combination of the following factors: [¶] 1. Present or threatened modification or destruction of its habitat; [¶] 2. Overexploitation; [¶] 3. Predation; [¶] 4. Competition; [¶] 5. Disease; or [¶] 6. Other natural occurrences

12

or human-related activities." (Regs. § 670.1, subd. (i)(1)(A), italics added.) The next provision provides that "[a] species may be delisted as endangered or threatened . . . if the Commission determines that its continued existence is *no longer threatened* by any one or any combination of the factors provided in subsection (i)(1)(A) above." (*Id*., § 670.1, subd. (i)(1)(B), italics added.) We do not agree with the Court of Appeal that this provision's use of the phrase "no longer threatened" (*ibid*.) was intended to preclude delisting where new evidence shows that the species never qualified as endangered, and to permit consideration only of "events that occur after the listing of the species." Our conclusion is consistent with the view of the Commission — which promulgated the regulation — that it may, pursuant to a delisting petition offering new evidence to challenge "a prior listing decision," delist an "entire 'species' based on a determination of [its] biological status." In light of the considerations discussed above — the Act's language, structure, and legislative history — the language of the regulation cannot carry the weight the Court of Appeal gave it.

Nor can the language of section 2077, subdivision (a), on which the Court of Appeal secondarily relied. As noted above, that section requires the Department to "review species listed as an endangered species . . . every five years to determine if the conditions that led to the original listing are still present." (*Ibid*.) Given that CESA reflects "the policy of the state to conserve, protect, restore, and enhance any endangered species" (§ 2052), it makes abundant sense to provide for automatic periodic review of whether "the conditions that led to the original listing are still present" (§ 2077, subd. (a)). At the same time, it would *not* make sense to provide for *automatic* periodic *reconsideration* of the Commission's *initial* listing decision. Instead, it would be more sensible to allow for such reconsideration if and when "an interested person" gathers new evidence and puts it before the Commission through a petition "to remove a species from" the endangered species list pursuant to section 2071. Consistent with this view, as noted above, subdivision (d) of section 2077 states that notwithstanding the

13

automatic periodic review provision, "the [C]ommission or the [D]epartment may review a species at any time based upon a petition or upon other data available to the [D]epartment and the [C]ommission." Thus, as to the question now before us, unlike the Court of Appeal, we find no significance in the fact that the automatic periodic review refers to "the present condition of the species" rather than to the merits of the initial listing decision.

Although the parties agree that CESA allows a delisting petition to challenge, based on new evidence, an earlier listing decision, many points of disagreement remain between them regarding CESA's meaning, including the following: (1) does the term "native species" in the definition of "endangered species" (§ 2062) mean "native to the area" in which the species is listed, as plaintiffs assert, or "indigenous to California," as the Commission claims; (2) does the term "range" in that definition (*ibid*.) mean "historic," "native," and "natural range," as plaintiffs argue, or "present range," as the Commission contends; and (3) when a species is listed as endangered — here, "Coho salmon . . . south of Punta Gorda (Humboldt County)" (Regs., § 670.5, subd. (a)(2)(N)) — under what circumstances, if any, does CESA permit the Commission to delist only a portion of the listed species — here, coho south of San Francisco — i.e., to carve out a population included in the listed species and remove it from CESA's protections? The parties raised these issues below, but the Court of Appeal did not address them in light of its procedural ruling. Nor did the Court of Appeal address the parties' disagreement over whether plaintiffs' evidence substantiates their claim that coho are not native to the streams south of San Francisco and cannot survive in those streams without hatchery support. Given our reversal of the procedural ruling, it is appropriate to remand the matter for the Court of Appeal to consider these unresolved issues in the first instance, should it find their resolution

14

necessary.[5] (See *Hamilton v. Asbestos Corp., Ltd.* (2000) 22 Cal.4th 1127, 1149 ["It is appropriate to remand for the Court of Appeal to resolve . . . in the first instance" issues raised below that the court "did not reach because of its holdings" on other issues].)

**DISPOSITION**

For reasons stated above, we reverse the Court of Appeal's judgment and remand the matter for further proceedings consistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

---

**5**    Although these issues appear to be within the scope of our order granting review, we "need not decide every issue the parties raise or the court specifies." (Cal. Rules of Court, rule 8.516(b)(3).)

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Central Coast Forest Association v. Fish and Game Commission
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 211 Cal.App.4th 1433
**Rehearing Granted**

_____

**Opinion No.** S208181
**Date Filed:** February 27, 2017
_____

**Court:** Superior
**County:** Sacramento
**Judge:** Gail D. Ohanesian*

_____

**Counsel:**

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Mary E. Hackenbracht, Kathleen A. Kenealy and Robert W. Byrne, Assistant Attorneys General, Sara J. Russell, Gavin G. McCabe, Tara L. Mueller and Cecilia L. Dennis, Deputy Attorneys General, for Defendant and Appellant.

Deborah A. Sivas, Robb W. Kapla and Molly Loughney for Environmental Law Clinic, Center for Biological Diversity, Turtle Island Restoration Network, California Trout, Central Coast Forest Watch and Lompico Watershed Conservancy as Amici Curiae on behalf of Defendant and Appellant.

Murphy & Buchal and James L. Buchal for Plaintiffs and Respondents.

Damien M. Schiff and Anthony L. Francois for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiffs and Respondents.

*Retired judge of the Sacramento Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Tara L. Mueller
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
(510) 622-2136

James L. Buchal
Murphy & Buchal
3425 SE Yamhill Street, Suite 100
Portland, OR  97214
(503) 227-1011