Filed 5/31/22 (review denied 9/21/22: reposted with Supreme Court order and statement)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ALMOND ALLIANCE OF CALIFORNIA et al., | C093542 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201980003216CUWMGDS) |
| v. | |
| FISH AND GAME COMMISSION et al., | |
| Defendants and Appellants; | |
| XERCES SOCIETY FOR INVERTEBRATE CONSERVATION et al., | |
| Interveners and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge. Reversed.

Rob Bonta, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Eric M. Katz, Supervising Deputy Attorney General, Jeffrey P. Reusch and Adam L. Levitan, Deputy Attorneys General, for Defendants and Appellants California Fish and Game Commission and California Department of Fish and Wildlife.

Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas, Matthew J. Sanders, and Stephanie L. Safdi, for Intervenors and Appellants Xerces Society for Invertebrate Conservation, Defenders of Wildlife, and Center for Food Safety.

Nossaman, Paul S. Weiland, Robert D. Thornton, Benjamin Z. Rubin, and Samantha Savoni, for Plaintiffs and Respondents Almond Alliance of California et al.

1

The California Endangered Species Act (Act) (Fish & G. Code,[1] § 2050 et seq.) directs the Fish and Game Commission (Commission) to "establish a list of endangered species and a list of threatened species." (§ 2070.) The issue presented here is whether the bumble bee, a terrestrial invertebrate, falls within the definition of fish, as that term is used in the definitions of endangered species in section 2062, threatened species in section 2067, and candidate species (i.e., species being considered for listing as endangered or threatened species) in section 2068 of the Act. More specifically, we must determine whether the Commission exceeded its statutorily delegated authority when it designated four bumble bee species as candidate species under consideration for listing as endangered species.

We first reaffirm and expand upon our conclusion in *California Forestry Association* that section 45 defines fish as the term is used in sections 2062, 2067, and 2068 of the Act, by application of section 2. (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1552 (*California Forestry Assn.*).) That means the Commission has the authority to list an invertebrate as an endangered or threatened species. We next consider whether the Commission's authority is limited to listing only aquatic invertebrates. We conclude the answer is, "no." Although the term fish is colloquially and commonly understood to refer to aquatic species, the *term of art* employed by the Legislature in the definition of fish in section 45 is *not* so limited.

We acknowledge the scope of the definition is ambiguous but also recognize we are not interpreting the definition on a blank slate. The legislative history supports the liberal interpretation of the Act (the lens through which we are required to construe the Act) that the Commission may list *any invertebrate* as an endangered or threatened

---

[1] Undesignated section references are to the Fish and Game Code. References to the code are to the Fish and Game Code.

species.  We thus agree with the Commission, the California Department of Fish and Wildlife (Department), and intervenors Xerces Society for Invertebrate Conservation, Defenders of Wildlife, and Center for Food Safety (collectively public interest groups) that the trial court erred when it reached a contrary conclusion.[2]  We accordingly reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[3]

I

*The Definition Of Fish In Section 45*

Section 45 is located in chapter 1, "general definitions" (bolding and capitalization omitted), of division 0.5, "general provisions and definitions" (bolding and capitalization

---

[2]     Petitioners Almond Alliance of California, California Association of Pest Control Advisers, California Citrus Mutual, California Cotton Ginners and Growers Association, California Farm Bureau Federation, Western Agricultural Processors Association, Western Growers Association, and The Wonderful Company LLC (collectively petitioners) named both the Commission and the Department as respondents in their writ petition.  Petitioners, however, sought relief against only the Commission and later stipulated the Department be designated a real party in interest.

[3]     The parties filed several requests for judicial notice.  We granted one such request, filed by the public interest groups, in an October 2021 order.  We deferred ruling on three additional requests, filed by petitioners, the public interest groups, and the Commission and Department, respectively.  We now grant those requests because they contain relevant statutory law (Evid. Code, § 451, subd. (a)), regulations or legislative enactments (*id*., § 452, subd. (b)), official acts of legislative and executive departments, including administrative agencies, of the United States and California (*id*., § 452, subd. (c); *Post v. Prati* (1979) 90 Cal.App.3d 626, 634 [legislative history falls within § 452, subd. (c)]), and documents not reasonably subject to dispute and capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy (Evid. Code, § 452, subd. (h)).  On the eve of oral argument, petitioners further requested we take judicial notice of Assembly Bill No. 559 (2015-2016 Reg. Sess.) (Assembly Bill 559) and various legislative history documents analyzing the bill.  We granted the request but admonish petitioners' counsel for not presenting the documents to the trial court in the first instance and waiting until the eve of oral argument to present the documents to this court and thereby eliminating any opportunity for the other parties to provide a written analysis regarding the documents' applicability to the issue presented.

3

omitted) of the code.  Prior to 1969, section 45 defined fish as "wild fish, mollusks, or crustaceans, including any part, spawn or ova thereof."  In 1969, the Legislature amended section 45 via Senate Bill No. 858 (1969 Reg. Sess.) (Senate Bill 858) to add invertebrates and amphibia to the definition of fish.  (Stats. 1969, ch. 689, § 1.) Section 45 has been amended only once since 1969 -- in 2015 (effective January 1, 2016), when the Legislature made nonsubstantive stylistic changes, modifying the definition to read " '[f]ish' means a wild fish, mollusk, crustacean, invertebrate, amphibian, or part, spawn, or ovum of any of those animals."  (Stats. 2015, ch. 154, § 5.)

When Senate Bill 858 was moving through the Legislature, the Department and Natural Resources Agency submitted an enrolled bill report in support of the bill, stating "[t]he expanded definition of fish will permit closer control and monitoring of the harvest of species such as starfish, sea urchins, sponges and worms, and the . . . Commission will be authorized to make regulations deemed necessary for proper protection and management of these species."  (Dept. Fish & Game and Natural Resources Agency, Enrolled Bill Rep. on Senate Bill 858, July 24, 1969.)  The Department of Finance also submitted an enrolled bill report regarding Senate Bill 858.  The Department of Finance therein stated:  "By expanding the definition of fish as proposed in this bill, it will be possible for the . . . Commission to regulate the taking of amphibians (frogs) and invertebrates, such as starfish, sea urchins, anemones, jellyfish and sponges."  (Dept. Finance, Enrolled Bill Rep. on Senate Bill 858, Aug. 1, 1969.)

Section 2 in the same chapter as section 45 provides the definition of fish governs the code and regulations adopted under the code, "[u]nless the provisions or the context otherwise requires."[4]

---

[4]     When the Act was enacted in 1984, former section 2 provided:  "Unless the provisions or the context otherwise requires, these definitions, rules of construction, and general provisions shall govern the construction of this code and all regulations made or

II

*The 1970 Endangered And Rare Animals Legislation*

"California has been at the forefront of enacting legislation to protect endangered and rare animals -- first doing so in 1970." (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1540.) The 1970 endangered and rare animals legislation (1970 Legislation) provided "[n]o person shall import into this state, or take, possess, or sell within this state, any bird, mammal, fish, amphibia or reptile, or any part or product thereof, that the commission determines to be an endangered animal or rare animal, except as otherwise provided in this chapter." (Former § 2052; see Stats. 1970, ch. 1510, § 3.) Former section 2051 defined " '[e]ndangered animal' " as "an animal of a species or subspecies of birds, mammals, fish, amphibia, or reptiles, the prospects of survival and reproduction of which are in immediate jeopardy from one or more causes, including loss of habitat, change in habitat, overexploitation, predation, competition, or disease"; and " '[r]are animal' " as "an animal of a species or subspecies of birds, mammals, fish, amphibia or reptiles that, although not presently threatened with extinction, is in such small numbers throughout its range that it may be endangered if its environment worsens." (Former § 2051; see Stats. 1970, ch. 1510, § 3.)

III

*Pertinent Listing History Under The 1970 Legislation*

On June 27, 1980, the Commission unanimously passed an amendment to California Code of Regulations, title 14, section 670.5 to include as endangered animals the Lange's metalmark butterfly and the El Segundo blue butterfly, and as rare animals

---

adopted under this code." (Stats. 1959, ch. 994, § 1.) Section 2 was amended in 1998 and now provides: "Unless the provisions or the context otherwise requires, the definitions in this chapter govern the construction of this code and all regulations adopted under this code." (Stats. 1998, ch. 1052, § 3.) The statute thus has not materially changed for purposes of determining whether section 45 applies to define fish, as the term is used in sections 2062, 2067, and 2068 of the Act.

the Smith's blue butterfly and the Trinity bristle snail. The Trinity bristle snail is a terrestrial gastropod that is both a mollusk and an invertebrate.

The minutes from the meeting state the Commission's executive secretary reported the Commission had received a letter from Deputy Attorney General Denis Smaage, "which justified the Commission's authority to classify insects as rare or endangered," and reaffirmed the Commission had the authority to designate invertebrates as rare and endangered animals.

The Commission submitted the June 1980 adopted California Code of Regulations, title 14, section 670.5 amendment to the Office of Administrative Law for approval and publication.[5] The Office of Administrative Law disapproved the request on the ground the 1970 Legislation could not "be construed to include insects within the definition of 'birds, mammals, fish, amphibia, or reptiles.' " The Commission asked for reconsideration, to which the Office of Administrative Law responded the Commission's remedy was to appeal the decision to the Governor, but the time to do so had lapsed.

At a meeting on August 1, 1980, the Commission considered whether to refile the rejected amendment "re: list of rare and endangered species of birds, mammals, fishes, insects, crustaceans, reptiles and mollusks." (Capitalization omitted.) The meeting minutes note the Commission's executive secretary "stated that the Commission had received a letter from Gene Livingston, Director of the Office of Administrative Law, which took exception to the Deputy Attorney General's opinion regarding the definition of insects as fish was in error. Mr. Livingston contended that insects are not fish and that the Commission lacked authority to list insects as endangered or rare species." The

---

[5] The Office of Administrative Law decides whether to approve or disapprove certain regulations submitted to it by other administrative agencies after making determinations of, among other things, the submitting agency's authority in taking the action and the action's consistency with the law. (Gov. Code, §§ 11349.1, subd. (a), 11349.3, subd. (a).)

Commission's executive secretary requested authorization "to refile the order with the insects deleted from the list, and to then respond to concerns of Mr. Livingston with regard to the listing [of] insects." The Commission unanimously approved the executive secretary's request.

On September 6, 1980, the Trinity bristle snail was added to California Code of Regulations, title 14, section 670.5 as a rare animal. It was listed as a mollusk, which falls only within the definition of fish in section 45 as a species then protected under the 1970 Legislation. In other words, it did not otherwise qualify as a bird, mammal, amphibian, or reptile in former section 2051. (See Stats. 1970, ch. 1510, § 3.)

By 1984, the Commission had listed 65 endangered and rare animals under the 1970 Legislation. The Trinity bristle snail was one of the listed rare animals. The list also included two crustaceans -- the California freshwater shrimp as an endangered animal and the Shasta crayfish as a rare animal.

IV

*The Act's Legislative History*

In 1984, the 1970 Legislation was repealed and replaced with the Act. (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1540.) In contrast to the 1970 Legislation's "[e]ndangered animal" and "[r]are animal" terminology, the Act defined and applied to "[e]ndangered species" and "[t]hreatened species." (Stats. 1984, ch. 1162, § 6; Stats. 1984, ch. 1240, § 2.)

As originally introduced, Assembly Bill No. 3309 (1983-1984 Reg. Sess.) (Assembly Bill 3309) would have amended (rather than repealed) the 1970 Legislation, and both the endangered species and threatened species definitions would have expressly included invertebrates as species and subspecies subject to protection, in addition to birds, mammals, fishes, amphibians, and reptiles. (Assembly Bill 3309, as introduced Feb. 16, 1984.) Shortly thereafter, the bill was amended to repeal the 1970 Legislation and replace it with the Act, but the proposed inclusion of invertebrate within the

7

endangered and threatened species definitions remained unchanged. (Assem. Amend. to Assembly Bill 3309, Apr. 23, 1984.) The Assembly also added plants to the definition of threatened and endangered species. (*Ibid.*)

Assembly Bill 3309 was amended twice in the Senate in June 1984. The first amendment is immaterial to this appeal; invertebrates were still expressly included within the definitions of endangered or threatened species. (Assem. Amend. to Assembly Bill 3309, June 11, 1984.) Addressing this version of the bill, the Department and the Natural Resources Agency, on June 26, 1984, submitted a bill analysis in support of the bill, stating: "[Assembly Bill] 3309 . . . would change the designation categories of 'endangered' and 'rare' to 'endangered' and 'threatened,' and would extend the provisions of the Act to plants. Also, by adding the term 'invertebrates' to the definitions of endangered and threatened species, this bill would reaffirm the Commission's authority to include invertebrates among the groups of animals that may be designated as endangered or threatened." (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.) They further explained, "[s]ince 1970, the . . . Commission ha[d] declared 65 species of mammals, birds, reptiles, amphibians, fishes, and invertebrates to be endangered or rare." (*Ibid.*)

As to their position regarding invertebrates, the Department and the Natural Resources Agency continued: "The [1970 Legislation] defined species as birds, mammals, fishes, reptiles, and amphibians. Although, technically, these terms name only vertebrate classes of animals, it was the Department's understanding of legislative intent that the [1970 Legislation] was to extend to invertebrates as well. It was not believed necessary to include the term invertebrate in the original legislation because 'fish' is defined in the Fish and Game Code to include 'invertebrates' (Section 45, General Provisions and Definitions). This was supported by the fact that the Department has had a long history of regulation and management of numerous classes of invertebrates. In fact, three species of invertebrates are currently designated as endangered or rare by the

. . . Commission. [¶] Specifying invertebrates in the definitions of endangered and threatened species, as proposed by [Assembly Bill] 3309, would serve to remove any doubts as to the Commission's authority to designate insects as endangered or threatened, a doubt raised by the Office of Administrative Law in 1981 when it challenged the Commission's designation of four species of butterflies as endangered. Although the Attorney General affirmed the Commission's authority, the designation was not pursued because the period for appeal had expired."**6** (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.) The Department and the Natural Resources Agency stated their view that "[i]nclusion of the term invertebrates in the definitions of endangered and threatened species would help eliminate confusion on the part of [the Office of Administrative Law] over the Commission's authority under the Act, but does not add any new authority to that which the [Attorney General] indicates already exists." (*Ibid*.)

On June 25, 1984, the day *before* the Department and the Natural Resources Agency submitted the foregoing bill analysis, Assembly Bill 3309 was amended to remove invertebrate from the proposed definitions of endangered and threatened species. (Sen. Amend. to Assembly Bill 3309, June 25, 1984.) That amendment also added to the definitions of endangered and threatened species that any species determined to be endangered or rare animals by the Commission under the 1970 Legislation on or before January 1, 1985, would be endangered or threatened species under the Act. (*Ibid*.) The bill was further amended to add the following as section 3: "The department shall participate fully and actively in the review of invertebrate [*sic*] native to this state for

---

**6** It appears the Department and Natural Resources Agency meant to refer to the Office of Administrative Law's 1980 decision. We are unaware of any other decision by the Office of Administrative Law in 1981 regarding the Commission's decision to list species of butterflies as endangered or rare animals under the 1970 Legislation.

9

listing as endangered or threatened species by the United States Department of the Interior, Fish and Wildlife Service pursuant to the federal Endangered Species Act (16 U.S.C. Sec. 1531 et seq.). [¶] The department shall report to the Legislature on or before May 15, 1985, its recommendations relating to the necessity and feasibility of including invertebrates in the California Endangered Species Act." (Sen. Amend. to Assembly Bill 3309, June 25, 1984, italics omitted.)

Addressing the June 25, 1984, version of the bill, the Senate Committee on Natural Resources wrote "[s]ixty-five species of animals (excluding invertebrates) have been designated as endangered or rare by the . . . . Commission." (Sen. Com. on Natural Resources, Analysis of Assembly Bill 3309, as amended June 25, 1984.)[7] The committee explained Assembly Bill 3309 would incorporate "[s]everal concepts from federal law . . . into state law." (Sen. Com. on Natural Resources, Analysis of Assembly Bill 3309, as amended June 25, 1984.) It qualified, however: "Unlike federal law, the bill would exclude all invertebrates from eligibility for listing as threatened or endangered species. Federal law permits the listing of any invertebrate except any insect that poses an 'overwhelming or overriding risk to man'. The Department would, however, be required to participate in the consideration of the listing of threatened or endangered invertebrates native to California by the U.S. Fish and Wildlife Service. Additionally, the Department would be required to report by May 15, 1985, on the necessity and feasibility of including invertebrates in [the Act]." (*Ibid.*)

The Senate again amended the bill twice in August 1984. On August 6, 1984, the Senate, in pertinent part, removed the requirement that the Department participate in the

---

**7** We note the Senate Committee on Natural Resources' analysis states it was analyzing Assembly Bill 3309 as "amended in the Senate June 26, 1984." (Sen. Com. on Natural Resources, Analysis of Assembly Bill 3309, as amended June 25, 1984.) The correct amendment date was June 25, 1984, as no amendment was made to the bill on June 26, 1984.

review of California native invertebrates for listing under the federal Endangered Species Act. (Sen. Amend. to Assembly Bill 3309, Aug. 6, 1984.) On August 22, 1984, the Senate, in pertinent part, further struck the requirement that the Department "report to the Legislature on or before May 15, 1985, its recommendations relating to the necessity and feasibility of including invertebrates in [the Act]." (Sen. Amend. to Assembly Bill 3309, Aug. 22, 1984.)

The Assembly Office of Research prepared a report in advance of the Assembly considering whether to concur in the Senate's amendments to Assembly Bill 3309. (Assem. Office of Research Rep. on Assembly Bill 3309, Aug. 29, 1984.) In discussing the bill as passed in the Assembly on June 13, 1984, the Assembly Office of Research made no mention of invertebrates. It instead stated the bill, as passed in the Assembly, repealed the provisions of the 1970 Legislation and "[d]efined 'threatened species' and 'endangered species,' including plants." (Assem. Office of Research Rep. on Assembly Bill 3309.) In discussing the Senate's amendments, the Assembly Office of Research again did not mention invertebrates. (*Ibid.*) It explained the Senate amended the bill to provide that any species listed by the Commission as an endangered or rare animal prior to January 1, 1985, would be endangered and threatened species under the Act. (*Ibid.*)

In September 1984, the Department and the Natural Resources Agency submitted an enrolled bill report on Assembly Bill 3309. (Dept. Fish & Game and Natural Resources Agency, Enrolled Bill Report on Assembly Bill 3309, Sept. 12, 1984.) They explained the "bill was last analyzed following amendments in the Assembly on June 11" and, "[s]ince that time, several substantive and minor changes ha[d] occurred." (*Ibid.*) The Department and the Natural Resources Agency considered the deletion of invertebrate from the definitions of endangered and threatened species to be a minor change, albeit one that "merits discussion," explaining: "It was thought that adding this term to the definitions would clarify the Commission's authority to include invertebrates among the animals that it listed as endangered and threatened, but after further

11

consideration, the Department has concluded that sufficient authority currently exists and that adding the term invertebrates in the legislation would only serve to confuse the matter. For example, to have included the term would have required that, for consistency, all other references in the Fish and Game Code to the various groups of animals be amended to add the term invertebrates, as necessary." (*Ibid.*) As background, the Department and the Natural Resources Agency noted: "Since 1970, the . . . Commission has declared 65 species of mammals, birds, reptiles, amphibians, fishes, and invertebrates to be endangered or rare." (*Ibid*.)

V

*The Act Generally*

"In [the Act], the Legislature found and declared that certain species of fish, wildlife and plants have been rendered extinct as a consequence of man's activities; that other species of fish, wildlife and plants are in danger of or threatened with extinction because their habitats are threatened with destruction, adverse modification or severe curtailment, or because of overexploitation, disease, predation, or other factors; and that these species are of ecological, educational, historical, recreational, esthetic, economic, and scientific value to the people of California, and the conservation, protection and enhancement of them and their habitat is of statewide concern. (§ 2051.)" (*Natural Resources Defense Council v. Fish & Game Com.* (1994) 28 Cal.App.4th 1104, 1111.) The Legislature further found and declared in the Act "the policy of the state to conserve, protect, restore, and enhance any endangered species or any threatened species and its habitat." (§ 2052.)

It is the Commission's duty to "establish a list of endangered species and a list of threatened species," and to "add or remove species from either list if it finds, upon the receipt of sufficient scientific information . . . that the action is warranted." (§ 2070.) The Act identifies the species subject to protection as "native species or subspecies of a

12

bird, mammal, fish, amphibian, reptile, or plant." (§§ 2062, 2067 & 2068.)[8] "Under [the Act], 'a native species or subspecies' qualifies as 'endangered' if it 'is in serious danger of becoming extinct throughout all, or a significant portion, of its range due to one or more causes, including loss of habitat, change in habitat, overexploitation, predation, competition, or disease.' (§ 2062.)" (*Central Coast Forest Assn. v. Fish & Game Com.* (2017) 2 Cal.5th 594, 598 (*Central Coast Forest Assn. I*).) When it enacted the Act, the Legislature further declared, "[a]ny species determined by the [C]ommission as 'endangered' on or before January 1, 1985, is an 'endangered species.' " (§ 2062.)

"A 'native species or subspecies' qualifies as 'threatened' if it is 'not presently threatened with extinction,' but 'is likely to become an endangered species in the foreseeable future in the absence of . . . special protection and management efforts.' (§ 2067.)" (*Central Coast Forest Assn. I*, *supra*, 2 Cal.5th at p. 598.) When it enacted the Act, the Legislature also declared, "[a]ny animal determined by the [C]ommission as 'rare' on or before January 1, 1985, is a 'threatened species.' " (§ 2067.) The Commission's list of endangered and threatened species appears in section 670.5, title 14 of the California Code of Regulations. (*Central Coast Forest Assn. I*, at p. 598.)

"Any 'interested person may petition the [C]ommission to add a species to, or to remove a species from' these lists. (§ 2071.) A multi-step process exists for processing these petitions. First, the Department . . . , upon a referral from the Commission (§ 2073), 'evaluate[s] the petition on its face and in relation to other relevant information the [D]epartment possesses or receives,' and prepares a 'written evaluation report' that includes a recommendation as to whether the Commission should 'reject[]' the petition or 'accept[] and consider[]' it, depending on whether 'there is sufficient information to indicate that the petitioned action *may be* warranted.' (§ 2073.5, subd. (a), italics added.)

---

**8** These three statutes (§§ 2062, 2067 & 2068) have not been amended since being enacted in 1984.

13

During this evaluation, any 'person may submit information to the [D]epartment relating to the petitioned species.' (§ 2073.4, subd. (a).) Second, the Commission, after 'consider[ing] the petition, the [D]epartment's written report, [and] written comments received,' determines whether the petition 'provides sufficient information to indicate that the petitioned action *may be* warranted.' (§ 2074.2, subd. (e)(2), italics added; see *id*., subd. (e)(1).) Upon finding that the petition does not provide such information, the Commission rejects it. (§ 2074.2, subd. (e)(1).) Upon finding that the petition does provide such information, the Commission 'accept[s]' it 'for consideration.' (§ 2074.2, subd. (e)(2).) Third, as to an accepted petition, the Department then conducts a more comprehensive 'review of the status of the [petitioned] species' and produces a written report, 'based upon the best scientific information available to the [D]epartment, which indicates whether the petitioned action *is* warranted.' (§ 2074.6, italics added.) Finally, after receiving the Department's report, the Commission determines whether the petitioned action 'is warranted' or 'is not warranted.' (§ 2075.5, subd. (e).)" (*Central Coast Forest Assn. I*, *supra*, 2 Cal.5th at p. 598.)

The Act defines " '[c]andidate species' " as "a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant that the [C]ommission has formally noticed as being under review by the [D]epartment for addition to either the list of endangered species or the list of threatened species, or a species for which the [C]ommission has published a notice of proposed regulation to add the species to either list." (§ 2068.) Like the 1970 Legislation, the Act does not contain a definition of fish. (See §§ 2060-2089.25.)

## VI

### *1998 Published Attorney General Opinion*

In 1998, the Attorney General published an opinion in response to a request from an assemblymember, in pertinent part, addressing "whether insects are eligible for listing as a threatened or endangered species under [the Act]." (81 Ops.Cal.Atty.Gen. 222, 224

14

(1998).)  The Attorney General quoted the definitions of endangered species in section 2062, threatened species in section 2067, and candidate species in section 2068, and then stated:  "These definitions limit the application of [the Act] to birds, mammals, fish, amphibians, reptiles, and plants.  Insects do not fall within any of these categories.  In zoological terms, insects comprise the Insecta class of the phylum Arthropoda.  (Webster's Third New Internat. Dict. (1971) p. 1168.)  Since they are not within the governing definitions contained in [the Act], insects are not eligible for listing as threatened or endangered species thereunder.  While the last sentence of section 2062 and of section 2067 'grandfather' certain designations made prior to 1985, no insects were so designated.  Therefore, we need not inquire whether insects were eligible for listing prior to 1985."[9]  (81 Ops.Cal.Atty.Gen. at pp. 224, 225, fn. omitted.)  In footnote 5, the Attorney General noted:  "By comparison, the Federal Endangered Species Act explicitly includes 'any member of the animal kingdom, including, without limitation any . . . arthropod or other invertebrate . . . .' "  (*Id*. at p. 225, fn. 5.)  The Attorney General concluded "that insects are ineligible for listing as a threatened or endangered species under [the Act]."  (*Id*. at p. 225.)

VII

*The Current Dispute*

In October 2018, the public interest groups petitioned the Commission to list four species of bumble bee as endangered species:  the Crotch bumble bee, the Franklin bumble bee, the Suckley cuckoo bumble bee, and the Western bumble bee (collectively the four bumble bee species).

---

[9]     As explained *post*, the Attorney General, however, did not consider that the Commission had listed at least one invertebrate under the Act and insects are invertebrates.

15

In April 2019, the Department issued a report, in which it recommended "the Commission accept the Petition for further consideration under [the Act]" because "the Petition provide[d] sufficient scientific information to indicate [listing the four bumble bee species] may be warranted." On June 12, 2019, the Commission "accepted for consideration the petition submitted to list [the four bumble bee species] as endangered" under the Act. On June 18, 2019, the Commission filed a notice of findings, pursuant to section 2074.2, stating "the Commission determined that the amount of information contained in the petition, when considered in light of the [Department's] written evaluation report, the comments received, and the remainder of the administrative record, would lead a reasonable person to conclude there is a substantial possibility the requested listing(s) could occur. [¶] Based on that finding and the acceptance of the petition, the Commission also provid[ed] notice that [the four bumble bee species] are candidate species as defined by Section 2068."

In September 2019, petitioners challenged the Commission's decision by filing a petition for writ of administrative mandate in the trial court. Petitioners asserted the Commission's determination that the four bumble bee species qualify for listing as candidate species under the Act "violated the Commission's legal duty, was a clear legal error, and was an abuse of discretion."

The trial court granted the writ petition. Because our task in this appeal is to "review the Commission's decision [designating the four bumble bee species in question as candidate species under the Act], rather than the trial court's decision [granting the writ petition]," we do not detail the parties' arguments in the trial court or the trial court's ruling. (*Central Coast Forest Assn. v. Fish & Game Com.* (2018) 18 Cal.App.5th 1191, 1205 (*Central Coast Forest Assn. II*).) Suffice it to say, the trial court concluded "the word 'invertebrates' as it appears in [s]ection 45's definition of 'fish' clearly denotes invertebrates connected to a marine habitat, not insects such as bumble bees." However, assuming there was some ambiguity in the definition, the trial court found the Senate

16

Committee on Natural Resources' bill analysis of Assembly Bill 3309 to be "clear evidence that the Legislature did not intend for [the Act] to protect invertebrates categorically." The trial court also found the 1998 published Attorney General opinion was "entitled to 'great weight,' especially in the absence of clear case authority." The trial court rejected the Commission's arguments that its "longstanding interpretation of [the Act]" and its "scientific expertise" entitled it to deference with respect to whether bumble bees may be listed, and further rejected the argument section 2582 expressed the Legislature's view that insects are covered under the Act or impliedly amended the Act to cover insects.[10]

The trial court entered judgment in favor of petitioners and issued a peremptory writ of mandate "commanding the [Commission] to rescind its determination that the listing of the Bumble Bees may be warranted and to provide notice that the Bumble Bees are not candidate species under [the Act]." The Commission, the Department, and the public interest groups appeal.

DISCUSSION

I

*Standard Of Review And Rules Of Statutory Construction*

The Commission's designation of a candidate species under section 2068 is reviewed under Code of Civil Procedure section 1094.5. (*Central Coast Forest Assn. II*,

---

[10] Section 2582, subdivision (a)(2) provides the Department may impose civil liability upon any person who does any of the following acts for profit or personal gain: "Unlawfully export[ing], import[ing], transport[ing], sell[ing], possess[ing], receiv[ing], acquir[ing], or purchas[ing], or unlawfully assist[ing], conspir[ing], or aid[ing] in the importing, exporting, transporting, sale, possession, receiving, acquisition, or purchasing of any plants, *insects*, or other species listed pursuant to the California Endangered Species Act (Chapter 1.5 (commencing with Section 2050)), which are taken or possessed in violation of this code or the regulations adopted pursuant to this code." (Italics added.)

17

*supra*, 18 Cal.App.5th at p. 1205; *Natural Resources Defense Council v. Fish & Game Com.*, *supra*, 28 Cal.App.4th at p. 1116.) That is because the Act's listing process is quasi-judicial in nature.

The sole assertion in this appeal is that the Commission had no statutory authority to designate the four bumble bee species as candidate species under section 2068 because bumble bees cannot fall within the definitions of endangered species in section 2062 or threatened species in section 2067. Because the question presented concerns the proper interpretation of a statute, and its application to undisputed facts, we review the question of law de novo. (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1544.)

In resolving the question of statutory interpretation, " ' "[o]ur fundamental task . . . is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." ' " (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at pp. 1544-1545.) We generally give words their usual and ordinary meaning. (*Id.* at p. 1545.) Where, however, the Legislature has provided a technical definition of a word, we construe the term of art in accordance with the technical meaning. (*Sacramento County Alliance of Law Enforcement v. County of Sacramento* (2007) 151 Cal.App.4th 1012, 1017.) In performing this function, we are tasked with liberally construing the Act to effectuate its remedial purpose. (*San Bernadino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 601 ["Laws providing for the conservation of natural resources are of great remedial and public importance and thus should be construed liberally"]; *California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1545 [same].)

If there is no ambiguity, we presume the lawmakers meant what they said, and we apply the term or phrase in accordance with that meaning. " ' "If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." ' [Citation.] While we exercise our independent judgment in interpreting a statute, we give deference to an agency's

18

interpretation if warranted by the circumstances." (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1545.)

## II

*Section 45 Defines Fish Within The Meaning Of Sections 2062, 2067, And 2068*

Petitioners argue section 45 does not apply through section 2 to define fish as used in sections 2062, 2067, and 2068 because the context requires otherwise. They rely on the rule against surplusage, which provides courts should "avoid, if possible, interpretations that render a part of a statute surplusage." (*People v. Cole* (2006) 38 Cal.4th 964, 980-981.) Petitioners assert the application of section 45 "would render the Legislature's act of expressly including 'amphibian' in the definitions of 'threatened,' 'endangered,' and 'candidate' species a meaningless act" because it would fail to " 'give meaning to every word and phrase' " given amphibian is included in the definition of fish in section 45 as well. They further assert application of section 45 would render meaningless words in several other statutes, such as, mollusks, crustaceans, and amphibians in section 1583; fish, amphibians, mollusks, and crustaceans in section 1003; and fish, amphibians, mollusks, and crustaceans in section 716.3, subdivision (q), which defines the term wildlife. We do not address petitioners' surplusage arguments as to code sections outside the Act. Our task is to interpret the term fish as used in sections 2062, 2067, and 2068 of the Act. Whether the provisions or context of other statutes require section 45 not define fish as the term is used in those statutes is not a question presented in this appeal.

The Commission and the Department respond petitioners' argument contradicts this court's opinion in *California Forestry Association*, in which we stated section 45 applies to the term fish as used in sections 2062 and 2067. In that case, we explained that, "[w]hile the definition of threatened species and endangered species in the [Act] includes 'native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant' (§§ 2062, 2067), the Legislature has narrowed the definition of 'fish' to mean [that

19

which falls within the definition of section 45].” (*California Forestry Assn.*, *supra*, 156 Cal.App.4th at p. 1552.) We decline to depart from the foregoing interpretation that section 45 defines fish as used in the endangered and threatened species definitions of the Act.

It is true the application of section 45 creates textual tension with the Legislature’s inclusion of amphibian in sections 2062, 2067, and 2068, because amphibian is already included in the definition of fish in section 45. The rule against surplusage is not, however, an infallible canon. The canon is merely a “guide for ascertaining legislative intent, it is not a command.” (*Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 146.) Statutory interpretation canons, like the rule against surplusage, must heed to legislative intent. (See *ibid.*; see also *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1013 [declining to apply *ejusdem generis* doctrine where such application would defeat the legislative intent].)

When it enacted the Act, the Legislature was aware the Department and the Commission had used section 45 to interpret fish as the term was used in the 1970 Legislation’s definitions of endangered and rare animals. Indeed, the Department and the Natural Resources Agency explained in their bill analysis report in June 1984 (well before several amendments and final passage of the bill) that the Commission *already had the authority to list invertebrates by application of section 45*, “the Department . . . had a long history of regulation and management of numerous classes of invertebrates,” and “three species of invertebrates [were already] designated as endangered or rare by the . . . Commission.” (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)

Like the definitions of endangered and rare animals in former section 2051, the definitions of endangered and threatened species in sections 2062, 2067, and 2068 include fish, without providing any associated definition in the Act. (Compare former § 2051 [see Stats. 1970, ch. 1510, § 3] with §§ 2062, 2067, 2068.) Had the Legislature

20

disagreed with the Department's and the Commission's application of section 45's definition of fish to the definitions of endangered and rare animals in the 1970 Legislation, as was the established practice in 1984, the Legislature could have said so or provided a different definition for fish in sections 2062, 2067, and 2068 of the Act. The Legislature did neither. The Legislature also could have modified the definition in section 45 if it wished to remove invertebrates from that definition. The Legislature again took no action. Legislative acquiescence in the face of a responsible agency's known construction of a statutory term indicates the Legislature did not intend to disturb the agency's interpretation. (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1082.)

Rather than providing any indicia of disagreeing with the Department's and the Commission's interpretation, the Legislature ratified their interpretation. The Legislature expressly provided prior listings under the 1970 Legislation would *meet* the definitions of endangered and threatened species in the Act. (§ 2062 ["Any animal determined by the [C]ommission as 'endangered' on or before January 1, 1985, is an 'endangered species' "]; §2067 ["Any animal determined by the [C]ommission as 'rare' on or before January 1, 1985, is a 'threatened species' "].) In doing so, the Legislature confirmed a terrestrial mollusk and invertebrate, the Trinity bristle snail, was a threatened species within the meaning of section 2067, and two crustaceans met the definitions of endangered and threatened species within the meaning of sections 2062 and 2067. (Cal. Code Regs., tit. 14, § 670.5, Register 83, No. 12 (March 19, 1983) pp. 52.72.2-52.72.4.) The Legislature's overt act in that regard cannot be ignored.

The *only* way the mollusk and two crustaceans could be endangered or threatened species is by application of section 45 to sections 2062 and 2067. The Legislature thus expressly sanctioned the application of section 45 to those provisions of the Act.

Moreover, the Legislature amended section 45 in 2015 (Stats. 2015, ch. 154, § 5), years after this court concluded in *California Forestry Association* that section 45 applies to sections 2062 and 2067. The Legislature made only nonsubstantive changes to

21

section 45 in 2015.  (Stats. 2015, ch. 154, § 5.)  Had the Legislature disagreed with this court's conclusion in 2007 that section 45 applied to define fish as used in sections 2062 and 2067, it could have amended section 45 (or the definitions in the Act) at any point thereafter to clarify its contrary intent.  The Legislature took no such action.  When the Legislature amends a statute without changing the statute in response to a prior judicial construction, it is presumed the Legislature knew of the interpretation and acquiesced to it.  (See *People v. Blakeley* (2000) 23 Cal.4th 82, 89.)

Given our conclusion section 45 applies to sections 2062, 2067, and 2068, we do not address petitioners' argument that the *noscitur a sociis* canon should be applied to read "a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant" in sections 2062, 2067, and 2068, as encompassing only vertebrate animals.  Plainly, section 45 expressly includes invertebrates within the definition of fish.

We further do not find the legislative history of the Act to support a contrary interpretation -- i.e., that the Legislature intended for the term fish in sections 2062, 2067, and 2068 to exclude invertebrates.  Petitioners assert the addition of the reporting requirement relating to the necessity and feasibility of including invertebrates under the Act in the June 25, 1984, amendment to Assembly Bill 3309 "at the same time that the Legislature deleted 'invertebrates' [from the bill] is a dispositive statement of the Legislature's understanding that [the Act] did not apply to invertebrates."  Had Assembly Bill 3309 remained in the form of the June 25, 1984, amendment, petitioners' position might have merit.  But the bill was *not* enacted in that form.  The Legislature instead *deleted* the reporting requirement on August 22, 1984, a few months *after* the Department and the Natural Resources Agency submitted their bill analysis stating *invertebrates were already included in section 45*.  (Sen. Amend. to Assembly Bill 3309, Aug. 22, 1984.) The Legislature thus did not feel the need to have the Department report on the necessity and feasibility of including invertebrates under the Act, presumably because, as the Department and the Natural Resources Agency explained, invertebrates were already

22

included in the definition of fish by application of section 45.  (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)  The Legislature could have disagreed with the Department's and the Natural Resources Agency's bill analysis and amended Assembly Bill 3309 to clarify its contrary view when the Senate made amendments to the bill in August 1984, and when the Assembly later considered whether to concur in those amendments; but the Legislature again took no such action.

For this same reason, we do not give credence to the Senate Committee on Natural Resources' analysis of the June 25, 1984, version of the bill, in which the invertebrate reporting requirement was included.  (Sen. Com. on Natural Resources, Analysis of Assembly Bill 3309, as amended June 25, 1984.)  The committee was mistaken when it stated the bill would exclude all invertebrates, perhaps because it had not yet had an opportunity to review the Department's and the Natural Resources Agency's bill analysis, which was submitted the next day.  As the Department and the Natural Resources Agency explained in the bill analysis, three invertebrates were already listed as endangered and rare animals under the 1970 Legislation, well before Assembly Bill 3309 was introduced, and the June 25, 1984, version of the bill added the provisions that invertebrates listed as endangered or rare animals under the 1970 Legislation would be endangered or threatened species under sections 2062 and 2067 of the Act.  (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984; Sen. Amend. to Assembly Bill 3309, June 25, 1984.)  The Department and the Natural Resources Agency later reiterated the position in the enrolled bill report.  They explained the Commission had declared "65 species of mammals, birds, reptiles, amphibians, fishes, *and invertebrates* to be endangered or rare" and the deletion of invertebrate from express inclusion in the definitions of endangered and threatened species was minor because sufficient authority already existed to list invertebrates as endangered and threatened species.  (Dept. Fish & Game and Natural Resources Agency, Enrolled Bill

Report on Assembly Bill 3309, Sept. 11, 1984, italics added.) Our Supreme Court has sanctioned the consideration of enrolled bill reports by a responsible agency in analyzing legislative intent. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3.)

The Attorney General's cursory 1998 opinion stating insects are ineligible for listing under the Act is even less persuasive. Petitioners argue we should defer to the Attorney General's formal opinion because formal opinions of the Attorney General are persuasive authority. (Citing *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 104.) Petitioners assert, although the Attorney General did not specifically address section 45, "the Attorney General cited to the definitions section multiple times" in other parts of the opinion and thus "was clearly aware of the definitions in Chapter 1 of the Fish and Game Code." Petitioners posit, because the Attorney General considered "the definitions in Chapter 1 of the Fish and Game Code," the Attorney General must have concluded section 45 does not apply to the Act. We disagree.

It is true our Supreme Court has said " '[o]pinions of the Attorney General, while not binding, are entitled to great weight. [Citations.] In the absence of controlling authority, these opinions are persuasive "since the Legislature is presumed to be cognizant of that construction of the statute" ' " and we presume the interpretation " 'has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted . . . .' " (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17.) But there are several reasons the Attorney General's 1998 opinion has no persuasive value under the circumstances presented.

First, *in 1984* the Legislature did not have before it the Attorney General's *1998* opinion. (Cf. *California Assn. of Psychology Providers v. Rank*, *supra*, 51 Cal.3d at p. 17; *California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1042; *Napa Valley Educators' Assn. v. Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 251.) In fact, in 1984, as noted by the Department and the

Natural Resources Agency in their bill analysis, the Attorney General's position apparently was that the Commission *had* the authority to list insects, such as butterflies. (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)  Second, the 1998 opinion makes no mention of section 45, and we decline to infer, as petitioners do, the Attorney General must have considered the *unmentioned* statute.  Indeed, the opinion makes clear the Attorney General merely looked to the definitions in sections 2062, 2067, and 2068, and found insects were not expressly included in the list identified in those statutes -- i.e., birds, mammals, fish, amphibians, reptiles, and plants -- *without any further analysis*.  Third, the Attorney General did not, in 1998, discuss or analyze the term invertebrate in the definition of fish in section 45, and failed to recognize the Commission had, in fact, listed invertebrates under the 1970 Legislation, one of which is a threatened species by application of section 2067.  (81 Ops.Cal.Atty.Gen., *supra*, at pp. 224-225, fn. omitted.)  And fourth, the Attorney General, in 1998, did not consider the legislative history.  We thus find no persuasive value in the Attorney General's published 1998 opinion.

In sum, the Commission *has the authority to list invertebrates as endangered or threatened species*.  We next consider whether the Commission may list only aquatic invertebrates or whether it may list any invertebrate as an endangered or threatened species.

### III

*The Commission May List Any Invertebrate*

*Meeting The Requirements Of Sections 2062, 2067, And 2068*

Petitioners assert, if section 45 applies to sections 2062, 2067, and 2068, the term invertebrate should be read as limited to only aquatic invertebrates, thereby excluding terrestrial insects, because:  (1) the First District Court of Appeal in 1987 concluded the Act does not " 'protect insect species such as the endangered butterflies on San Bruno Mountain' " (quoting *W. W. Dean & Assocs. v. City of S. San Francisco* (1987) 190

Cal.App.3d 1368, 1377); (2) the Department has, at times subsequent to 1984, taken the position the Act does not protect insects; (3) the Office of Administrative Law's 1980 determination butterflies could not be listed under the 1970 Legislation is entitled to deference and constitutes "persuasive authority that supports the trial court's determination" (citing *Grier v. Kizer* (1990) 219 Cal.App.3d 422, 435 and *Union of Am. Physicians & Dentists v. Kizer* (1990) 223 Cal.App.3d 490, 498); (4) the United States Fish and Wildlife Service in 1997, 2002, 2011, and 2014, stated insects are not covered under the Act; (5) the Legislature recently "again confirmed that insects cannot be listed," as stated in a report by the Senate Committee on Natural Resources and Water's analysis of Senate Bill No. 49 during the 2017-2018 regular session; (6) the Department's and the Department of Finance's enrolled bill reports on Senate Bill 858, when section 45 was amended to include invertebrates in 1969, indicate the term invertebrate was added to the definition of fish in section 45 to protect aquatic life; (7) application of the *noscitur a sociis* canon requires a restrictive reading of the term invertebrate as applying to aquatic species only; and (8) including terrestrial insects in the definition would lead to absurd results if section 45 is applied to sections 8030, 8034, 8036, 8598.2.

We certainly agree section 45 is ambiguous as to whether the Legislature intended for the definition of fish to apply to purely aquatic species. A fish, as the term is commonly understood in everyday parlance, of course, lives in aquatic environments. As the Department and the Commission note, however, the technical definition in section 45 includes mollusks, invertebrates, amphibians, and crustaceans, all of which encompass terrestrial and aquatic species.[11] Moreover, by virtue of the express language in section 2067, the Trinity bristle snail -- a *terrestrial* mollusk and invertebrate -- *is* a

---

[11] For example, the common pill bug is a terrestrial crustacean, the Siskiyou Mountains salamander is a terrestrial amphibian, and the Trinity bristle snail is a terrestrial gastropod that is both a mollusk and an invertebrate.

26

threatened species under the Act and could have qualified as such *only* within the definition of fish under section 45.  In the end, we do our best to determine the Legislature's intent *when it enacted the Act*, while construing the Act liberally, as we must.  (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048 ["[i]t is axiomatic that in assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment"]; *San Bernadino Valley Audubon Society v. City of Moreno Valley*, *supra*, 44 Cal.App.4th at p. 601 ["[l]aws providing for the conservation of natural resources are of great remedial and public importance and thus should be construed liberally"]; *California Forestry Assn.*, *supra*, 156 Cal.App.4th at pp. 1544-1545 [same].)

We conclude a liberal interpretation of the Act,[12] supported by the legislative history and the express language in section 2067 that a *terrestrial* mollusk and invertebrate is a threatened species (express language we cannot ignore), is that fish defined in section 45, as a term of art, is not limited solely to aquatic species. Accordingly, a terrestrial invertebrate, like each of the four bumble bee species, may be listed as an endangered or threatened species under the Act.

We view the favorable legislative history supporting that interpretation as follows. Under the 1970 Legislation, the Commission could list as endangered and rare animals "an animal of a species or subspecies of birds, mammals, fish, amphibia, or reptiles" meeting the statutes' further qualifications.  (Former § 2051; see Stats. 1970, ch. 1510, § 3.)  Since 1969, the definition of fish in section 45 has included mollusks, invertebrates, and crustaceans.  (Stats. 1969, ch. 689, §1.)  By 1984, the Commission had listed as a rare animal a terrestrial mollusk and invertebrate.

In 1984, when the Act was introduced, the Legislature considered whether to add invertebrates to the list of birds, mammals, fish, amphibians, or reptiles otherwise eligible

---

[12]	Undoubtedly, the liberal construction of section 45 is that it applies to all invertebrates -- i.e., that the term is not limited to aquatic invertebrates.

for listing as endangered and threatened species (previously called endangered and rare animals under the 1970 Legislation).  (Assembly Bill 3309, as introduced Feb. 16, 1984.)  In their bill analysis, the Department and the Natural Resources Agency supported the addition of invertebrates as provided in the introduced version of Assembly Bill 3309, but noted the Commission already had the authority to list invertebrates under section 45 and had previously listed three invertebrates as endangered or rare animals.  (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)  The Department and the Natural Resources Agency noted their view that the Commission had the "authority to designate insects [like butterflies] as endangered or threatened" (a position with which the Attorney General apparently agreed at the time), even though the Office of Administrative Law expressed a "doubt" in that regard.  (*Ibid.*)

The Legislature ultimately struck the addition of invertebrates in the introduced version of the bill *after* the Department and the Natural Resources Agency submitted their bill analysis, *but the Legislature did not change section 45 or make any modifications to the list of species eligible for listing under the Act* in response to the stated position in the bill analysis that the Commission had "the authority to designate insects," such as butterflies.  (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)  The Legislature further added *express language* incorporating the Commission's prior endangered and rare animal listings, including the listing of a *terrestrial* mollusk and invertebrate as a threatened species, within the definitions of endangered and threatened species in sections 2062 and 2067.

"[I]t is well established that '[t]he contemporaneous construction of a new enactment by the administrative agency charged with its enforcement, although not controlling, is entitled to great weight.'  [Citation.]  An implicit reason for the rule is that a contemporaneous construction is likely to reflect the understanding of the Legislature that enacted the statute, which will not be the case with an administrative construction

28

made many years after the fact."**[13]**  (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1218, fn. 3.)  From the foregoing legislative history, we glean the Legislature was aware of and agreed with the Department's and the Natural Resources Agency's interpretation of the Commission's listing authority -- which the Department and the Natural Resources Agency expressly explained *extended to insects like butterflies*.  (Dept. Fish & Game and Natural Resources Agency, Analysis of Assembly Bill 3309, June 26, 1984.)  That is because the Legislature essentially maintained the status quo as to the Commission's listing determinations by not changing section 45 or otherwise providing any limiting language in the Act, and instead enacting functionally identical language to the Commission's listing authority under the 1970 Legislation.  (See *In re Dannenberg*, *supra*, 34 Cal.4th at p. 1082 [legislative acquiescence in the face of a responsible

---

**13**     As to the Department's actions after 1984, we understand the Department has, at times, taken the apparently contradicting position that insects are not included in the meaning of fish as defined in the code.  (See, e.g., Cal. Code Regs., tit. 14, § 783.1, subd. (d).)  We are not, however, tasked with evaluating whether *the Department* has changed its view following the enactment of the Act.  We are instead tasked with evaluating what the *Legislature intended when it enacted the Act in 1984*.  As our Supreme Court explained, an administrative construction made many years after the fact does not reflect the understanding of the Legislature when it enacted the statute. (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1218, fn. 3.)  For this same reason, we do not find persuasive the 1990 letter from the then-Director of the Department to an assemblymember concerning the Legislature's intent in enacting the Act in 1984 (of which we took judicial notice *ante*), or the United States Fish and Wildlife Services' brief statements in its own rulemaking in 1997, 2002, 2011, and 2014, that insects are not covered under the Act.  Moreover, as to the 1990 letter authored by the then-Director of the Department, we note it does not aid in the interpretation of the statute because it merely states the individual opinion of the author.  (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5.)

agency's known construction of a statutory term indicates the Legislature did not intend to disturb the agency's interpretation].)**14**

The Legislature then approved of the Commission's prior decision to list a *terrestrial* mollusk and invertebrate as a rare animal under the 1970 Legislation by expressly stating it "*is* a 'threatened species' " under the Act. (§ 2067, italics added.) In other words, the Legislature approved of the Commission's interpretation that section 45 gave it the authority to list a *terrestrial* species under the definition of fish. This legislative history, when viewed through the liberal lens with which we are tasked, supports the interpretation the Commission has the authority to list *any* invertebrate as an endangered, threatened, or candidate species, if it meets the requirements in those definitions of the Act.

In light of the foregoing, we do not find the Office of Administrative Law's 1980 determination persuasive. We also note nothing in the record contains the Office of Administrative Law's reasoning, nor do we know why it believed terrestrial invertebrates, such as butterflies, could not be listed under the 1970 Legislation, whereas it had no quibble with the Commission's determination to list a terrestrial mollusk and invertebrate like the Trinity bristle snail as a threatened animal.

Turning to petitioners' remaining arguments, we do not consider the application of section 45 to statutes in other chapters of the code. That is because to do so, we would have to consider whether "the provisions or the context otherwise requires" that

--------

**14** We note a responsible agency's interpretation of a bill does "not take precedence over more direct windows into legislative intent such as committee analyses." (*In re Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1218, fn. 3.) The record, however, contains no contrary committee analyses. As explained *ante*, the Senate Committee on Natural Resources was mistaken when it stated *all* invertebrates would be excluded from eligibility for listing as endangered and threatened species. (Sen. Com. on Natural Resources, Analysis of Assembly Bill 3309, as amended June 25, 1984.)

section 45 not apply to each of those statutes (§ 2), which are not questions before us in this appeal.

We further do not find persuasive the general comment in the Senate Committee on Natural Resources and Water's report on then-proposed, *but not enacted*, Senate Bill No. 49 during the 2017-2018 regular session that section 2062 does "not include insects." Committee reports concerning *unenacted* bills cannot rebut evidence of the Legislature's actual intent at the time it enacted a statute. (See *People v. Gonzales* (2015) 232 Cal.App.4th 1449, 1461 ["The Legislature's expressions of its intent at the time it passes a bill cannot be rebutted by subsequent statements by a different Legislature about its retrospective understanding of the nature of the previous enactment"].)

For the same reason, we do not find the legislative history of Assembly Bill 559, as advanced by petitioners, persuasive. That bill added section 1021 to the code. (Stats. 2015, ch. 478, § 2.) Section 1021 generally provides *the Department* "may take feasible actions to conserve monarch butterflies and the unique habitats they depend upon for successful migration," and "may partner with federal agencies, nonprofit organizations, academic programs, private landowners, and other entities that undertake actions to conserve monarch butterflies and aid their successful migration, including the Monarch Joint Venture." (§ 1021, subds. (a)-(b).) By adding section 1021, the Legislature did *not* modify or amend any provision *of the Act*. (See §§ 2060-2089.25.) Section 1021 further does not impact or address *the Commission's* authority under the Act. The fleeting statements in the legislative history of Assembly Bill 559 that the Act does not cover or include a category for insects simply has no bearing on what the Legislature intended when it enacted the Act in 1984. "Committee reports about subsequent bills involving unrelated amendments, while not entirely irrelevant, may not be utilized to rebut evidence of the Legislature's actual intent at the time it enacted a statute. . . . The Legislature's expressions of its intent at the time it passes a bill cannot be rebutted by subsequent

31

statements by a different Legislature about its retrospective understanding of the nature of the previous enactment." (*People v. Gonzales*, *supra*, 232 Cal.App.4th at p. 1461.)

We also find no merit in petitioners' reliance on the 1987 appellate case because the court did not consider the meaning of invertebrate in section 45, as applied to sections 2062, 2067, and 2068. The development at issue in that case was proposed on San Bruno Mountain, which is inhabited by the Mission Blue butterfly. (*W. W. Dean & Assocs. v. City of S. San Francisco*, *supra*, 190 Cal.App.3d at pp. 1371, 1373.) The butterfly was listed as an endangered species under the federal Endangered Species Act. (*W. W. Dean & Assocs.*, at p. 1371.) The City of South San Francisco approved an amendment to the then-existing habitat conservation plan for the development. (*Id.* at pp. 1372-1374.) The question before the appellate court was whether the adoption of the amendment constituted an administrative act not subject to referendum. (*Id*. at p. 1371.) The appellate court answered the question in the affirmative. (*Ibid*.)

Pertinent to petitioners' argument in this appeal, the appellate court explained "where a local governing body implements federal policy pursuant to a comprehensive plan of federal regulations governing matters of national concern, its actions are administrative and not subject to local referendum. Such result is consistent with the principle of federal preemption: state law is nullified to the extent it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*W. W. Dean & Assocs. v. City of S. San Francisco*, *supra*, 190 Cal.App.3d at p. 1376.) The appellant in that case argued there was no preemption of state law and state law exclusively governed on the issue "because California has a federally approved cooperative conservation agreement," as provided in section 1535 of title 16 of the United States Code. (*W. W. Dean & Assocs.*, at pp. 1376-1377.) The appellate court found the federal code section irrelevant to the development because the development was "not part of nor governed by any state cooperative agreement" under the referenced code section. In a single sentence, without any analysis or discussion, the appellate court

stated:  "Moreover, as appellant itself points out, [the Act] does not even protect insect species such as the endangered butterflies on San Bruno Mountain."  (*Id.* at p. 1377.)

Clearly, because the appellate court in *W. W. Dean & Associates* did not consider or interpret the provisions of the Act at issue here, the case is not authority regarding the interpretation of section 45 and its application under the Act.  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043 ["It is axiomatic that cases are not authority for propositions that are not considered"].)

We next consider petitioners' suggested application of the *noscitur a sociis* canon. "*Noscitur a sociis* means ' "a word takes meaning from the company it keeps." ' [Citation.]  Under this rule, ' " '[a] word of uncertain meaning may be known from its associates and its meaning "enlarged or restrained by reference to the object of the whole clause in which it is used." [Citation.]' [Citation.]" [Citation.]  " ' "In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list." ' " ' "  (*People v. Lucero* (2019) 41 Cal.App.5th 370, 398.)

If we were to apply the *noscitur a sociis* canon to the term invertebrate in section 45 *to limit and restrict* the term to aquatic species, as petitioners suggest, we would have to apply that limitation to *all* items in the list.  In other words, we would have to conclude the Commission may list only aquatic mollusks, crustaceans, and amphibians as well. Such a conclusion is directly at odds with the Legislature's approval of the Commission's listing of a terrestrial mollusk and invertebrate as a threatened species.  Furthermore, limiting the term to aquatic would require a restrictive rather than liberal interpretation of the Act, which is also directly at odds with our duty to liberally construe the remedial statutes contained therein.  We thus decline to apply the statutory interpretation canon here.

We also do not read the Department's and the Natural Resources Agency's enrolled bill report regarding Senate Bill 858's amendment to section 45 as restrictive as petitioners suggest we should read it. The Department and the Natural Resources Agency merely identified examples of invertebrates (i.e., using "such as"). (Dept. Fish & Game and Natural Resources Agency, Enrolled Bill Report on Senate Bill 858, July 24, 1969.) The Department and the Natural Resources Agency included worms in the list of examples, in addition to starfish, sea urchins, and sponges. (*Ibid.*) The enrolled bill report did not specify or indicate "worms" meant only aquatic worms. (See, e.g., 3 The New Century Dict. of English Language (1927) pp. 2226-2227 [worm defined as, "[i]n popular language, any of numerous, small creeping animals with more or less slender, elongated bodies, and without limbs or with very short ones, including individuals of widely differing kinds, as earthworms, tapeworms, insect larvae, adult forms of some insects, certain small crustaceans and mollusks, certain lizards . . ."]; Webster's 3d New Internat. Dict. (1981) p. 2636, col. 1 [worm defined to include "earthworm; *broadly*: an annelid worm" (capitalization omitted), "any of numerous relatively small more or less elongated [usually] naked and soft-bodied animals resembling an earthworm," and "an insect larva"]; Oxford English Dict. (1933) p. 307, col. 1 [worm defined as "[a] member of the genus *Lumbricus*; a slender, creeping, naked, limbless animal, usually brown or reddish, with a soft body divided into a series of segments; an earthworm. More widely, any annelid, terrestrial, aquatic, or marine"].)

Finally, we do not consider the Department of Finance's enrolled bill report to be instructive as to which species qualified as invertebrates in section 45, because the *Department of Finance* is not a responsible agency implementing and enforcing the provisions of the Act. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19.)

For the foregoing reasons, we agree with the Department and the Commission that the Commission may list any invertebrate as an endangered or threatened species under 2062 and 2067, if the invertebrate meets the requirements of those statutes, and thus may

also designate any invertebrate as a candidate species under section 2068, if the species or subspecies may otherwise qualify as an endangered or threatened species.

## DISPOSITION

The judgment is reversed.  Appellants are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/_____
Robie, J.



We concur:


/s/_____
Blease, Acting P. J.


/s/_____
Hoch, J.

Court of Appeal, Third Appellate District - No. C093542

**S275412**

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

_____

ALMOND ALLIANCE OF CALIFORNIA et al., Plaintiffs and Respondents,

v.

FISH AND GAME COMMISSION et al., Defendants and Appellants;

XERCES SOCIETY FOR INVERTEBRATE CONSERVATION et al., Interveners and
Appellants.

_____

The petition for review is denied.

Guerrero, J., is of the opinion the petition should be granted.

(See separate statement by Cantil-Sakauye, C. J.)

_____/s/_____
                                    *Chief Justice*

ALMOND ALLIANCE OF CALIFORNIA v. FISH AND GAME
COMMISSION

S275412


Statement by Chief Justice Cantil-Sakauye


Our denial of a petition for review does not communicate any particular view regarding the merits of the issues presented in the petition. Thus, all should understand that our decision to deny review in this case is not an endorsement (nor is it a rejection) of the statutory analysis undertaken by the Court of Appeal, which determined that bumble bees, a nonaquatic invertebrate, are susceptible to being listed as endangered under the California Endangered Species Act (Fish & G. Code, § 2050 et seq.; CESA) because that statute applies to fish (Fish & G. Code, §§ 2062, 2067 & 2068), and "invertebrates" are included within what the Court of Appeal deemed to be the applicable definition of "fish" (*id.*, § 45). (*Almond Alliance of California v. Fish & Game Com.* (2022) 79 Cal.App.5th 337, 341.)

Yet if experience is any guide, our decision not to order review will be misconstrued by some as an affirmative determination by this court that under the law, bumble bees are fish. A better-informed observer might ask: How can the court pass up this opportunity to review the Court of Appeal's interpretation of the Fish and Game Code, which seems so contrary to common knowledge that bumble bees are not a type of fish? Doesn't this clear disconnect necessarily amount to "an important question of law" (Cal. Rules of Court, rule 8.500(b)(1))

1

warranting this court's intervention, because the Legislature could not possibly have intended such a result?

Were things always that simple. Careful analysis of a statute to divine legislative intent can sometimes yield results that might seem surprising at first blush. Courts engaged in this task have interpreted "less" as "more" (*Amalgamated Trans. Loc. 1309 v. Laidlaw Tran. Ser.* (9th Cir. 2006) 435 F.3d 1140, 1146) and "unlawful" as "lawful" (*Scurto v. LeBlanc* (La. 1938) 184 So. 567, 574). Long ago, the United States Supreme Court concluded that the "seas" referenced in one statute required no water at all (*Murray's Lessee v. Baker* (1818) 16 U.S. 541, 545); quite recently, it determined that a fish is not a "tangible object" (*United States v. Yates* (2015) 574 U.S. 528, 536).

These kinds of seemingly illogical outcomes can in fact best capture the enacting legislature's intent in a variety of circumstances. A statute may be construed in a manner that goes beyond the literal meaning of its text to avoid an absurd result the legislature could not possibly have contemplated. Sometimes courts perceive a scrivener's error or typo that must be corrected to vindicate the intent behind a measure. Or the context surrounding the use of a word or phrase within a statute can convey that it carries an unusual meaning, peculiar to that law. The Court of Appeal below concluded that the interpretive question before it fell into the last of these categories, with the consequence that bumble bees should indeed be regarded as "fish" under the CESA.

Even if the Court of Appeal arrived at what might superficially seem like a counterintuitive result, that alone does not establish that it erred. Moreover, our decision not to order

review here does not prevent us from considering the CESA's reach in some future case, at which time we may agree or disagree with the Court of Appeal's analysis.  In the interim, the Legislature is in a position to make whatever statutory amendments it may regard as necessary or useful.  For although it may not be exceptional for a court to determine that a particular word or phrase within a statute carries a meaning that deviates from common parlance or understanding, such decisions also can provide notice to legislators that some clarification may be in order.

**CANTIL-SAKAUYE, C. J.**


**We Concur:**

**CORRIGAN, J.**
**GROBAN, J.**